# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

TRUSTEES OF THE PLUMBERS AND )
PIPEFITTERS NATIONAL PENSION FUND )
AND INTERNATIONAL TRAINING FUND, )    Case No.: 2:14-cv-00436-GMN-GWF
　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiffs, 　　　　　 )    **ORDER**
　　　vs. 　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　)
ALL SEASONS INTERIOR & EXTERIOR )
MAINTENANCE, INC., a NEVADA 　　 )
CORPORATION, *et al.*, 　　　　　　 )
　　　　　　　　　　　　　　　　　)
　　　　　　　Defendants. 　　　　　)
_____ )

　　　　Pending before the Court is the Motion for Summary Judgment (ECF No. 11) filed by Defendants Gamma Construction Company ("Gamma") and Fidelity and Deposit Company of Maryland ("FDCM") on May 5, 2014.  On May 29, 2014, Plaintiffs the Trustees of the Plumbers and Pipefitters National Pension Fund and International Training Fund ("Plaintiffs") filed their Response in Opposition (ECF No. 16) on May 29, 2014, and Gamma and FDCM filed their Reply (ECF No. 17) on June 2, 2014.  For the reasons addressed below, the Court **Denies** the Motion for Summary Judgment.

## I.　　BACKGROUND

　　　　According to their Complaints (ECF No. 1), Plaintiffs are express trusts created to represent certain organized labor unions. (Compl. ¶¶ 2–3, ECF No. 1).  On June 12, 2006, Defendant All Seasons Interior & Exterior Maintenance, Inc. ("All Seasons") entered into a collective bargaining agreement ("CBA") with a union represented by Plaintiffs. (*Id.* ¶ 12). According to Plaintiffs, this initial CBA and a successor CBA obligated All Seasons to make employee benefit contributions to the trusts. (*Id.* ¶¶ 13–14, 26–29).  However, All Seasons

failed to make the agreed upon contributions for a period between May 20, 2009 and January 20, 2010 relating to projects for which All Seasons was operating as a subcontractor for Gamma, and All Seasons failed to report these delinquencies. (*Id.* ¶¶ 30–32, 70; Audit, Ex. A to MSJ, ECF No. 11).

On May 25, 2012, All Seasons filed Chapter 11 bankruptcy petition, and Plaintiffs subsequently decided to audit All Season's payroll and business records. (Resp. to MSJ 4:25-5:7, ECF No. 16).  The audit, showing the payment deficiencies, was preliminarily completed on July 21, 2013, and on August 30, 2013, Plaintiffs advised the general contractors identified in the audit, including Gamma, of the deficiency. (*Id.* 5:18-19; Compl. ¶¶ 35–37, ECF No. 1). On September 11, 2013, Plaintiffs filed a motion in All Seasons bankruptcy proceeding entitled a "Precautionary Motion for Order Confirming that Stay is Inapplicable, or in the Alternative, for Relief from Automatic Stay, requesting that the Bankruptcy Court explicitly acknowledge that Plaintiffs had a right to pursue their claims against the general contractors, like Gamma, and their bonding companies, like FDCM. (Resp. to MSJ 5:20-25, ECF No. 16).  On February 21, 2014, however, the Bankruptcy Court dismissed All Seasons' bankruptcy proceeding without ruling on the pending motion. (*Id.* 7:4-11).

Plaintiffs subsequently filed their Complaint on March 21, 2014, alleging, *inter alia*, breach of contract against All Seasons, general contractor liability against Gamma, and Relief on Bond from FDCM. (Compl., ECF No. 1).

## II.   <u>LEGAL STANDARD</u>

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *See id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is

1   sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the

2   parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

3   *Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid

4   summary judgment by relying solely on conclusory allegations that are unsupported by factual

5   data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go

6   beyond the assertions and allegations of the pleadings and set forth specific facts by producing

7   competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

8         At summary judgment, a court's function is not to weigh the evidence and determine the

9   truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

10   The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn

11   in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is

12   not significantly probative, summary judgment may be granted. *See id.* at 249–50.

13   **III.**   **DISCUSSION**

14         In their Motion for Summary Judgment, Gamma and FDCM point out that the statutes of

15   limitations for Plaintiffs' claims against them had both already run by the time Plaintiffs filed

16   their Complaint on March 21, 2014. (MSJ 1:26-2:17, ECF No. 11).  Under Nevada law,

17   Plaintiffs' claim for out-of-state general contractor liability against Gamma is limited to "three

18   years … after the date … contributions or premiums should have been made or paid by the

19   subcontractor." Nev. Rev. Stat. § 11.209(1)(b).  Likewise, Plaintiffs' claim on FDCM's

20   contractor license bond is limited to "2 years after the commission of the act on which the

21   action is based." Nev. Rev. Stat. § 624.273(2).  Therefore, according to Gamma and FDCM,

22   because the contributions at issue here were due between May 20, 2009 and January 20, 2010,

23   the applicable statute of limitations for Plaintiffs' claims against Gamma had run by January

24   20, 2013 and the applicable statute of limitations for their claims against FDCM had run by

25   January 20, 2012. (MSJ 2:20-4:26, ECF No. 11).

Plaintiffs do not dispute that their Complaint was filed after the running of the applicable statutes of limitations for their claims against Gamma and FDCM. (Resp. to MSJ 8:12-13, ECF No. 16). Instead, Plaintiffs assert that Defendants' Motion for Summary Judgment should be denied because of the doctrine of equitable tolling. (*Id.* 8:13-15). Specifically, Plaintiffs contend that the statutes of limitations should be equitably tolled because "despite all due diligence," Plaintiffs were unable to learn who All Seasons contractors were until the audit was completed and were unable to pursue claims against those contractors until their Precautionary Motion was ruled on or the bankruptcy case dismissed. (*Id.* 12:21-13:7). However, the Court will not address the issue of equitable tolling because—despite Plaintiffs' acquiescence on this point—it finds that that Gamma and FDCM have failed to present sufficient evidence showing that there is not a genuine issue of material fact concerning whether the statues of limitations have run on Plaintiffs' claims.

The parties are correct that "[i]n ERISA actions the federal courts employ a state statute of limitations." *N. California Retail Clerks Unions & Food Employers Joint Pension Trust Fund v. Jumbo Markets, Inc.*, 906 F.2d 1371, 1372 (9th Cir. 1990) (citing *Hawaii Carpenters Trust Fund v. Waiola Carpenter Shop*, 823 F.2d 289, 298 (9th Cir. 1987)). "Because the cause of action is federal, however, federal law determines the time at which the cause of action accrues." *Id.*; *see also Wetzel v. Lou Ehlers Cadillac Grp. Long Term Disability Ins. Program*, 222 F.3d 643, 649 (9th Cir. 2000) ("the accrual of an ERISA cause of action is determined by federal, rather than state, law."); *Chuck v. Hewlett Packard Co.*, 455 F.3d 1026, 1031 (9th Cir. 2006) ("Because there is no specific federal statute of limitations governing claims for benefits under an ERISA plan, we look to the most analogous state statute of limitations to determine the length of the limitations period. . . . Federal law, however, governs the issue of when a cause of action accrues and thereby triggers the start of the limitations period.") (internal quotations omitted). Under federal law, a plaintiff's claim accrues and the statute of limitations

begins to run, "when the plaintiff knows or has reason to know of the injury that is the basis of the action." *Jumbo Markets*, 906 F.2d at 1372.  "Therefore, the relevant inquiry here is 'the time at which [Plaintiffs] knew or had reason to know of any underpayment.'" *Trustees of Operating Engineers Pension Trust v. Smith-Emery Co.*, 906 F. Supp. 2d 1043, 1058 (C.D. Cal. 2012) (citing *Jumbo Markets*, 906 F.2d at 1372).

It is certainly true that Plaintiffs knew or had reason to know of All Seasons' deficient payments at least by the time the audit was concluded on July 21, 2013.  It is also very likely that Plaintiffs knew or should have had reason to know of the deficiencies at the time All Seasons filed bankruptcy, which precipitated Plaintiffs decision to conduct the audit. *See Smith-Emery Co.*, 906 F. Supp. 2d at 1059 ("[T]the Court rejects plaintiffs' argument that they had no reason to know of any delinquent contributions until *after* the audit at issue in this litigation was completed in July 2011.  At a minimum, plaintiffs had reason to know of missing contributions once they decided that an audit was necessary, not after the audit was completed.").  All Seasons filed for bankruptcy on May 25, 2012. (Compl. ¶ 41, ECF No. 1). Therefore, if the bankruptcy filing date begins the running of the limitations periods, then Plaintiff had until May 25, 2014 and May 25, 2015 to file its claims against FDCM and Gamma, respectively.  Accordingly, the filing of Plaintiffs' Complaint on March 21, 2014 would be timely for both claims.

It is possible that Plaintiffs knew or should have known of All Seasons' deficient payments prior to the bankruptcy filing.  For example, it is possible that a sizable reduction in the amount of contributions reported by All Seasons from one month to another should have given Plaintiffs reason to know of All Seasons' deficient payments. *See Jumbo Markets*, 906 F.2d at 1373 ("In determining the date the Trust Funds had reason to know, the district court may consider evidence showing that the shift in September 1984 to reporting the correct number of hours was so great a change that the Trust Funds should have been alerted to the fact

that the previous reporting had been erroneous."); *see also Locals 302 & 612 of Int'l Union of Operating Engineers Const. Indus. Health & Sec. Fund v. Meko Const., Inc.*, No. C11-1113RAJ, 2012 WL 3812025, at *2 (W.D. Wash. Sept. 4, 2012) ("In this case, the trust funds might have had reason to know as early as July 2002 that Meko had not paid all required contributions.  Meko sent monthly reports to the trust funds for all of the contributions in question, and a jury could certainly conclude that the trust funds knew or had reason to know of the unpaid contributions as soon as they received the reports.").  In their Complaint, Plaintiffs admit that they received late payments of partial amounts of contributions for the months of October 2009 and January 2010 and that All Seasons "failed to submit reports after March 2012."[1] (Compl. ¶¶ 30–31, ECF No. 1).  The cessation of reporting and the fact that All Seasons' payments were late and potentially of a noticeably smaller amount could have put Plaintiffs on notice that All Seasons was not fulfilling its obligations.  However, Gamma and FDCM focused their briefs upon the inapplicability of the doctrine of equitable tolling rather than establishing the date Plaintiffs had reason to know of All Seasons' deficient payments.  Therefore, they failed to satisfy their initial burden of establishing the absence of a genuine issue of fact.

Accordingly, drawing all inferences in favor of Plaintiffs, the Court finds that a disputed issue of material fact exists concerning when Plaintiffs knew or should have known that All Seasons was not fulfilling its obligations under the CBA, triggering the limitations periods.  While it is certainly possible that Plaintiffs knew or had reason to know of All Seasons delinquency two or three years before the filing of the Complaint, the Court cannot make that determination as a matter of law.

---

[1] Reading this statement to mean that All Seasons failed to submit its remittance report for the month of April, it appears that Plaintiffs may have had reason to know of All Seasons' underpayments when it failed to provide the April 2012 report.  However, an April 2012 accrual date would still render as timely the March 21, 2014 filing date.

IV.     **CONCLUSION**

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment (ECF No. 11)

filed by Defendants Gamma and FDCM is **DENIED**.

**DATED** this 3rd day of February, 2015.

_____

Gloria M. Navarro, Chief Judge
United States District Judge